# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WADE MCMAHAN, | ) |
| | ) |
| Plaintiff, | ) No. 05 C 705 |
| | ) |
| vs. | ) Judge Wayne Andersen |
| | ) District Judge |
| RIZZA CHEVROLET, INC. | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on Defendant Rizza Chevrolet's Motion to Dismiss and Compel Arbitration. For the reasons stated below, we grant Defendant's motion.

## BACKGROUND

Wade McMahan, Plaintiff, filed a complaint against Defendant Rizza Chevrolet on February 4, 2005. In the complaint, Plaintiff alleges that Defendant violated the Truth in Lending Act, 15 U.S.C. § 1601(a). Plaintiff claims that Defendant sold Plaintiff a Pontiac Firebird for $18,295, but that the Firebird was actually worth about $17,000. Plaintiff also claims that Defendant said that Plaintiff's trade-in Mitsubishi Eclipse was worth $10,300 though it was actually worth approximately $7,800. Defendant allegedly recorded that Plaintiff's trade-in allowance was $1000 and that Plaintiff still owed $9,300 for his trade-in Mitsubishi. Plaintiff alleges that Defendant failed to disclose that it rolled into the financing for the Firebird at least $1,500 in debt from the trade-in Mitsubishi, and that this amount is an "amount financed" under the Truth in Lending Act. Finally, Plaintiff concludes that Defendant misrepresented the value of the trade-in Mitsubishi in order to get financing for Plaintiff by making Plaintiff's down payment appear higher than it actually was.

Defendant responded to the complaint with a Motion to Compel Arbitration, contending that Plaintiff agreed to arbitrate any claims arising from the purchase of the vehicle. Defendant attached the Arbitration Agreement (the "Agreement") signed by Plaintiff to its Motion. Defendant claims that this Agreement was attached to the purchase documents, and Plaintiff does not comment upon this allegation. The Agreement states:

> This Arbitration Agreement is incorporated into and made a part of any and all agreements or contracts executed on or about the date shown above or any related agreements or contract entered into before on or after the date above, and this Arbitration Agreement shall survive the expiration or voiding of any such agreements or contracts."

Defendant's Motion to Dismiss and Compel Arbitration, Ex. C. However, there is no date on the Agreement, and it does not specifically reference the transaction at issue between Plaintiff and Defendant. The Agreement further states that "by signing this Arbitration Agreement, you and we agree to submit our disputes to arbitration." Defendant's Motion to Dismiss and Compel Arbitration, Ex. C. The Agreement is signed by Plaintiff but it is not signed by Defendant.

Defendant's Motion to Compel requests that the court compel arbitration in accordance with the Agreement.

## DISCUSSION

In reviewing a motion to compel arbitration, the court must first determine if there is an agreement to arbitrate that was validly formed under the applicable state contract law. *Koveleskie v. SBC Capital Markets*, 167 F.3d 361, 366–67 (7th Cir. 1999) *citing Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). Here, the governing state law is Illinois law.

*I. Illinois Law Governing Contract Formation*

Because Illinois law does not require a signature in order to form a valid contract, the lack of a signature here does not preclude the Agreement from being mutual and supported by

2

consideration. Additionally, because the substance of the contract is clear, the absence of the date does not make the Agreement fail for lack of definiteness.

## A. Mutuality and Consideration

In determining the validity of a written agreement under Illinois law, the focus is on the intent of the parties. *See Lynge v. Kunstmann*, 418 N.E.2d 1140, 1144 (Ill. App. Ct. 1981). Illinois courts have found that "a signature is not always essential to the binding force of an agreement." *Id.* The purpose of a signature on the agreement is to show mutuality or assent, but mutuality and assent can also be shown by the conduct of the parties. *Id.* However, if the parties made a signature a condition precedent to the validity of the agreement, the unsigned agreement would not bind them. *Id.*; *see also Crum v. Krol*, 425 N.E.2d 1081, 1084 (Ill. App. Ct. 1981) (holding a contract valid despite the absence of a party's signature because the documents did not expressly require that party's approval as a condition precedent).

The Agreement at issue was signed by the Plaintiff, but not signed by the Defendant. Additionally, the Agreement was attached to the purchase contract, which was signed by both Plaintiff and Defendant. The language of the Agreement specifies that "by signing this Arbitration Agreement you and we agree to submit our disputes to arbitration." While this language clarifies what the signed Agreement does, it does not rise to the level of creating a condition precedent requiring both parties to sign in order to make the Agreement valid. Plaintiff does not contend that there was a lack of agreement to the arbitration provision, but merely that the Agreement is not enforceable for lack of mutuality because Defendant failed to sign. However, Defendant's intent to be bound by the Agreement is shown by its conduct: Defendant produced the Agreement, and attached the Agreement to the purchase documents signed by both parties. Consequently, the lack of Defendant's signature does not make the Agreement fail on these facts.

Plaintiff's related argument that the Agreement fails for lack of consideration is also unsuccessful. Mutuality of obligation is not required if the contract is supported by other consideration. *Garber v. Harris Trust & Savings Bank*, 432 N.E.2d 1309, 1313 (Ill. App. Ct. 1982). If there is no other consideration, a mutual promise to arbitrate is sufficient consideration to create a valid contract. *Id.* (*citing Armstrong Paint & Varnish Works v. Continental Can Co.*, 133 N.E. 711, 714 (Ill. 1921)).

In this case, mutuality is not required because the Agreement is supported by other consideration. The Agreement is part of the purchase documents for the car, and is supported by the consideration upholding its sale. Consequently, the Agreement was validly formed under Illinois contract law and is enforceable.

## B. Contractual Ambiguity

Illinois law requires the terms of a contract be reasonably certain in order to bind the parties. *Lee Shell Co., Inc. v. Model Food Center, Inc.*, 250 N.E.2d 666, 671 (Ill. App. Ct. 1969) (*citing A. S. & W. Club of Waukegan v. Drobnick*, 187 N.E.2d 247 (Ill. 1963). If material terms are indefinite the contract is not enforceable. *Id.*

Here, when the Agreement between the parties is read in light of the purchase documents, there is no ambiguity as to its terms. As previously discussed, because the Agreement was attached to the purchase documents, and because by its language it incorporates itself into them, the two should be taken together. While Plaintiff alleges that the Agreement does not refer to the terms of the Agreement, including the vehicle purchased and the date, these terms are clear by looking at the purchase documents.

Despite the lack of the date, the connection between the Agreement and the purchase documents is clear. The language of the Agreement provides: "[t]his Arbitration Agreement is incorporated into and made a part of any and all agreements or contracts executed on or about

4

the date shown above or any related Agreements or contracts entered into before, on or after the date above." Although the date is not filled in on the Agreement page, the Agreement was attached to the purchase documents concerning the purchase of McMahan's Firebird. Plaintiff does not allege that there is any other contract between him and Defendant to which this Agreement is supposed to apply; it was clear to both of them that the Agreement concerned the purchase of the Firebird. Because the Agreement was sufficiently definite to be enforceable, Plaintiff's related argument that it was too vague to be *specifically* enforceable also fails.

Plaintiff argues that because a survival provision within the Agreement is inconsistent with the Agreement's claim that it is part of the purchase documents, the Agreement must logically be a separate agreement. However, the Agreement by its terms is a part of the purchase documents, and logically would have to be so, since without the purchase documents there would be no transaction giving rise to claims to arbitrate. Whether other unrelated provisions are inconsistent is not the issue, as the Agreement itself specifies that should any provision be adjudicated unenforceable, the rest of the Agreement will remain in force.

## II. The Federal Arbitration Act

If an Agreement is determined to be validly formed under state law, as here, then the Federal Arbitration Act ("FAA") governs. *See Koveleskie v. SBC Capital Markets*, 167 F.3d 361, 367 (7th Cir. 1999). For an arbitration agreement to be enforceable in a district court under the FAA, the agreement must be in writing, and the court must be satisfied that the agreement was made and that one of the parties failed to comply. 9 U.S.C.A. § 4. The FAA does not specifically require a signature or a date. An arbitration agreement can be enforceable even if it is not signed or dated. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987).

If the agreement was properly formed under state and federal law, the FAA ensures that it is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

the revocation of any contract." 9 U.S.C.A. § 2. The FAA was intended to ensure that arbitration agreements are "as enforceable as other contracts, but not more so." *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) *citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

No element required by the FAA is at issue in this case. It is undisputed that the Agreement and purchase documents are in writing, and Plaintiff failed to comply with the provision in that Agreement requiring him to drop his suit upon notice of his obligation to arbitrate. Since the FAA provides that an otherwise validly formed contract to arbitrate is enforceable, this Agreement to arbitrate is enforceable.

## CONCLUSION

The Agreement between Plaintiff and Defendant is supported by consideration, and it is sufficiently definite to be valid under Illinois law. The Agreement also meets the requirements of the Federal Arbitration Act. Consequently, the Agreement is valid and binding on the parties. For the foregoing reasons, we grant Defendant's Motion to Compel Arbitration [21].

It is so ordered.

Wayne R. Andersen
United States District Court

Dated: August 31, 2006